IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Robert V. Waldrup, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. 2:11-3516-RMG |
| vs. ) | |
| ) | |
| Michael J. Astrue, Commissioner ) | |
| of Social Security, ) | **ORDER** |
| ) | |
| Defendant. ) | |
| ) | |
| ) | |

Plaintiff has brought this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of the final decision of the Commissioner of Social Security denying his claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). In accord with 28 U.S.C. § 636(b) and Local Civil Rule 73.02 DSC, this matter was referred to a United States Magistrate Judge for pre-trial handling. The Magistrate Judge issued a Report and Recommendation on January 18, 2013 recommending that the Commissioner's decision be affirmed. (Dkt. No. 14). Plaintiff filed objections to the Magistrate Judge's Report and Recommendation and the Commissioner filed a response. (Dkt. Nos. 16, 17). As set forth below, the decision of the Commissioner is reversed and remanded for further action consistent with this order.

**Legal Standard**

The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the

Court. *Mathews v. Weber*, 423 U.S. 261 (1976). The Court is charged with making a *de novo* determination of those portions of the Report and Recommendation to which specific objection is made. The Court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge. 28 U.S.C. § 636(b)(1).

The role of the federal judiciary in the administrative scheme established by the Social Security Act is a limited one. The Act provides that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). "Substantial evidence has been defined innumerable times as more than a scintilla, but less than preponderance." *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). This standard precludes *de novo* review of the factual circumstances that substitutes the Court's findings of fact for those of the Commissioner. *Vitek v. Finch*, 438 F.2d 1157 (4th Cir. 1971).

Although the federal court's review role is a limited one, "it does not follow, however, that the findings of the administrative agency are to be mechanically accepted. The statutorily granted right of review contemplates more than an uncritical rubber stamping of the administrative action." *Flack v. Cohen*, 413 F.2d 278, 279 (4th Cir. 1969). Further, the Commissioner's findings of fact are not binding if they were based upon the application of an improper legal standard. *Coffman v. Bowen*, 829 F.2d 514, 519 (4th Cir. 1987).

The Commissioner, in passing upon an application for disability benefits, is required to undertake a five-step sequential process. At Step One, the Commissioner must determine whether the applicant is engaged in substantial gainful work. 20 C.F.R. § 404.1520(a)(4)(i). If the claimant is not engaged in substantial gainful employment, the Commissioner proceeds to Step Two, which involves a determination whether the claimant has any "severe medically

determinable physical or mental impairment." *Id.* § 404.1520(a)(4)(ii). If the claimant has one or more severe impairments, the Commissioner proceeds to Step Three, which involves a determination whether any impairment of the claimant satisfies any one of a designated list of impairments that would automatically render the claimant disabled. *Id.* § 404.1520(a)(4)(iii).

If the claimant does not have a listed impairment, the Commissioner must proceed to Step Four, which involves an assessment of the claimant's Residual Functional Capacity ("RFC"). *Id.* § 404.1520(a)(4)(iv). This requires assessment of the claimant's ability "to meet the physical, mental, sensory, and other requirements of work." *Id.* § 404.1545(a)(4). In determining the claimant's RFC, the Commissioner "must first identify the individual's functional limitations or restrictions" and provide a narrative "describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence." SSR 96-8P, 61 Fed. Reg. 34474, 34475, 34478 (July 2, 1996).

Once the claimant's RFC is determined, the Commissioner must assess whether the claimant can do his past relevant work. 20 C.F.R. §§ 404.1520(4)(iv), 1545(a)(5)(i). If the claimant, notwithstanding the RFC determination, can still perform his past relevant work, he is deemed not to be disabled. If the claimant cannot perform his past relevant work, the Commissioner then proceeds to Step Five to determine if there is other available work in the national economy he can perform in light of the RFC determination. *Id.* § 404.1520(a)(4)(v).

Under the regulations of the Social Security Administration, the Commissioner is obligated to consider all medical evidence and the opinions of medical sources. *Id.* § 404.1545. This includes the duty to "evaluate every medical opinion we receive." *Id.* § 404.1527(c). Special consideration is to be given to the opinions of treating and examining physicians of the

claimant. *Id.* § 404.1527(c). Under some circumstances, the opinions of the treating physicians are to be accorded controlling weight. Even where the opinions of physicians are not accorded controlling weight, the Commissioner is obligated to weigh those opinions in light of a broad range of factors, including the examining relationship, the treatment relationship, length of treatment, nature and extent of the treatment relationship, supportability of the opinions in the medical record, consistency, and whether the treating physician was a specialist. *Id.* §§ 404.1527(c)(1)-(5).

The Commissioner has recognized that the need to carefully evaluate all medical opinions and clinical findings is particularly important when evaluating a disability claim where the claimant allegedly has Complex Regional Pain Syndrome. SSR 03-2P, 68 Fed. Reg. 59971 (Oct. 20, 2003). This condition, also know as Reflex Sympathetic Dystrophy Syndrome, can arise from a traumatic injury and can produce "persistent, burning, aching or searing pain." *Id.* at 59972. The Syndrome can arise in younger workers (ages 18-49) and clinical findings can include swelling, changes in skin color, texture, and temperature. *Id.* at 59973. In some patients, the signs may be transient, being present at one examination but not another. *Id.* at 59974. The Commissioner has noted that with Complex Regional Pain Syndrome it is not uncommon that the medical record will contain conflicting evidence and it may be necessary for the adjudicator to recontact the claimant or medical sources to obtain additional information. *Id.*

In evaluating a claimant's assertion that pain associated with his condition is disabling, the Commissioner recognizes that objective evidence alone may not be sufficient to assess the severity of the pain. 20 C.F.R. § 404.1529(c)(3). The Commissioner is obligated to consider all medical source evidence and carefully consider non-medical source information, including the

claimant's own statements. SSR 96-7P, 61 Fed. Reg. 34483, 34484 (July 2, 1996). Additionally, if the claimant's credibility regarding the extent and effects of his pain is challenged because of the lack of frequency of treatment, the Commissioner may need to recontact the claimant or inquire at the administrative hearing regarding whether certain impediments to treatment may explain the lack of frequency of care. *Id.* at 34487. Among the impediments that may justify infrequent treatment is an inability to afford treatment. *Id.* As the Fourth Circuit has made clear, a claimant may not be "penalized for failing to seek treatment [he] cannot afford." *Lovejoy v. Heckler*, 790 F.2d 1114, 1117 (4th Cir. 1986).

## Discussion

Plaintiff, who was 44 years of age at the time of the alleged onset of disability on June 15, 2007, asserts his disability arises primarily from three traumatic orthopaedic injuries he suffered during the calendar year 2006. The medical record indicates that Plaintiff fell 12 feet from a porch on January 5, 2006 and suffered a right calcaneal fracture. Transcript of Record ("Tr.") at 210. He received limited medical treatment for this injury, apparently because his worker compensation carrier would not approve additional care. Tr. at 316, 328. A return emergency department visit of January 23, 2006 noted his complaint that no orthopedist would see him and he continued to have pain. Tr. at 216. The record indicates that Plaintiff has had pain complaints with the right foot and ankle since this injury and has since walked continuously with a limp. Tr. at 316.

Plaintiff returned to work following his January 2006 injury and fell from a ladder on August 18, 2006, breaking his right leg and left hand. Tr. at 219-20, 225. A treating doctor later gave him an impairment rating of 20% to his right lower extremity for these injuries. Tr. at 219.

Plaintiff thereafter suffered a third injury on December 14, 2006 when he slipped and fell off a porch at home while attempting to do some plumbing work. Tr. at 229. This resulted in what his treating physician, Dr. Ian Archibald, described as "a nasty tibia fracture" of the left leg and "a near compartment syndrome of his left leg" which required surgery and a six-day hospitalization. Tr. at 229-30, 279. Plaintiff last saw Dr. Archibald on February 7, 2007, when the physician indicated a concern that the patient continued to request pain medication. Tr. at 280.

Plaintiff underwent an independent medical evaluation on November 27, 2007 conducted by Dr. Walter Grady, an orthopedic surgeon. Dr. Grady noted the claimant's complaint of significant pain in his right ankle and left lower leg as a result of his multiple traumatic injuries. Plaintiff informed Dr. Grady that his right leg throbs and swells whenever he is weight bearing and rated his pain that day as a 7.5 on a 10-point pain scale. Tr. at 321. Plaintiff also rated his left leg pain that day as a 6. *Id.*

Dr. Grady's evaluation included a careful physical examination of Plaintiff's right lower leg, ankle, and foot. He documented the presence of swelling and discoloration of the skin in and about the right ankle as well as the right foot and noted that the right foot and lower leg were cooler to the touch than the left foot and lower leg. Tr. at 323. Dr. Grady's final assessment included a diagnosis of Complex Regional Pain Syndrome "with atrophic changes and temperature change and overall appearance of hyperemia." Tr. at 324. He also diagnosed chronic pain of the right ankle "secondary to ligamentous injuries (fibulocalcancal, posterior tibfib, anterior talofibular ligament and deltoid ligament)" and chronic pain of the right foot "secondary to calcaneal fracture." *Id.* Dr. Grady recommended diagnostic studies to further evaluate post traumatic arthritis and a bone scan "to evaluate probable Complex Regional Pain

Syndrome changes." Tr. at 325. Dr. Grady gave Plaintiff a 44% impairment to his right lower extremity and an 18% impairment to his left lower extremity based upon the work related injuries suffered in January 2006 and August 2006.[1]

Harriet Wilkinson, a vocational consultant, assessed Plaintiff on January 14, 2008. Ms. Wilkinson documented that although Plaintiff described experiencing constant significant pain, he was not then receiving any treatment or medication and had no continuity of care. Tr. at 329, 334. She described Plaintiff as being unable to work and "essentially homeless", living off the charity of family and friends. Tr. at 332. Ms. Wilkinson observed that Plaintiff "suffers from chronic pain and Complex Regional Pain Syndrome that have been essentially untreated." Tr. at 335. She also concluded that from her vocational assessment Plaintiff was "unable to work in any capacity." *Id.*

Dr. Thomas G. Fleischer, an orthopedic surgeon, examined Plaintiff on October 16, 2008. He confirmed some range of motion abnormalities in Plaintiff's lumbar spine, knee, and right ankle and some abnormalities in Plaintiff's gait, squat, tandem walk, and heel/toe walk. Tr. 299-300. His diagnoses included post traumatic changes to the right subtalar joint and ankle and limitations on his prolonged standing and climbing. Tr. at 298. Dr. Fleischer concluded, however, that Plaintiff "is certainly capable of sedentary work." *Id.* He noted Plaintiff took no medications except Goody Powders. *Id.* Dr. Fleisher did not document any evaluation of Plaintiff's lower extremity pain or address Dr. Grady's diagnosis of Complex Regional Pain Syndrome.

---

[1] Dr. Grady did not address an impairment rating related to the December 2006 injury, which occurred while Plaintiff was at home.

Dr. Frank Ferrell conducted a chart review of Plaintiff's medical records on November 5, 2009. He noted Plaintiff's lower extremity fractures and recognized limitations that for all practical purposes limited the claimant to sedentary work. Tr. at 301-08. He explicitly referenced Dr. Fleischer's report and various treatment records but made no reference to the examination report of Dr. Grady or addressed Dr. Grady's diagnosis of Complex Regional Pain Syndrome. Tr. at 307. He also opined that the claimant's "statements and allegations are supported by objective medical evidence" and are "credible." Tr. at 306.

An administrative law judge ("ALJ") conducted an administrative hearing on September 30, 2010. Plaintiff testified about his three traumatic orthopedic injuries in 2006 and stated that he had "pain in my joints . . ., especially in my legs since my accidents." Tr. at 33-35, 39. He explained that he "was pretty much working everyday" before he suffered his multiple injuries but that he now suffered from chronic pain and swelling that made him unable to work. Tr. at 41, 43. Because of these injuries, he testified "[i]t's hard to move around, walk around, or anything." Tr. at 43. He stated he could not walk longer than about half a block and could not sit longer than 20 or 30 minutes. Tr. at 44-45. He further explained "I ain't never been a lazy person" but the chronic pain is "the worse thing I've ever had." *Id.*

Plaintiff further testified that because of his injuries he essentially was forced to live off the charity of his family and food stamps. Tr. at 40, 42. He also testified he has no health insurance and uses only over the counter medications for his pain. Tr. at 39. He does not drive a vehicle and performs no household chores. Tr. at 42.

The ALJ found that Plaintiff has severe impairments as a result of his left and right leg fractures, right calcaneal fracture, and arthritis. Tr. at 15. He concluded, however, that Plaintiff

was not disabled because he still had the reserve functional capacity for sedentary work. Tr. at 16. In reaching that conclusion, the ALJ found Plaintiff's testimony regarding the extent and intensity of his pain was not "wholly credible." Tr. at 20. The ALJ noted in his order on five separate occasions that Plaintiff had not seen a physician regularly since 2007 and took only over the counter pain medications. Tr. at 18-20. Thus, "[t]he claimant has not generally received the type of medical treatment one would expect from a totally disabled person." Tr. at 18. Further, while the ALJ noted Plaintiff had no health insurance, there was no inquiry at the administrative hearing or otherwise in the record concerning whether Plaintiff's lack of financial resources played any role in his lack of follow up care. Tr. at 20, 39.

The ALJ reviewed the report of the examination performed by Dr. Grady, documenting the findings of pain and swelling and diagnoses of probable post traumatic arthritis. Tr. at 19. He indicated he gave "less weight" to Dr. Grady's opinions regarding the Plaintiff's right and left lower extremity impairment ratings. *Id.* The ALJ did not, however, make *any* reference to Dr. Grady's diagnosis of probable Complex Regional Pain Syndrome or any of the findings of temperature variations and discoloration in the right ankle and lower extremity Dr. Grady recorded in his report. The ALJ indicated he gave "great weight" to the reports of Dr. Fleischer and Dr. Ferrell, neither of whom addressed Dr. Grady's diagnosis of Complex Regional Pain Syndrome.

A review of the various medical opinions in this case suggest substantial agreement among the various medical sources on many aspects of Plaintiff's impairments. All recognize Plaintiff suffered three traumatic orthopedic injuries in a twelve-month period, breaking his right leg, right ankle, and left leg. No medical source appears to question seriously that Plaintiff has

pain and the dispute here is over the extent of that pain. Plaintiff describes chronic, disabling pain, primarily arising from his right and left lower extremities. At least one of the medical sources, Dr. Grady, has offered the opinion that Plaintiff has probable Complex Regional Pain Syndrome, a condition that can arise from a traumatic injury and produce severe pain. Dr. Grady made certain clinical findings that support that diagnosis.

In reviewing the opinions of an examining specialist medical expert, such as Dr. Grady, the Commissioner has the duty "to evaluate every medical opinion we receive" and to base the residual functional capacity assessment "on all relevant medical and other evidence." 20 C.F.R. §§ 404.1527(c), 1545(a)(3). Further, "[i]f the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." SSR 96-8P, 61 Fed. Reg. at 34478. Moreover, the adjudicator has the duty to evaluate carefully a diagnosis of Complex Regional Pain Syndrome, particularly where the claimant presents with a history of traumatic injury, severe persistent pain and local changes in the affected limb regarding swelling, color and temperature. SSR 03-2P, 68 Fed. Reg. at 59973-74.

Measured by these legal standards, the ALJ's decision is clearly deficient. The opinion of an examining physician, Dr. Grady, that the claimant has probable Complex Regional Pain Syndrome, is, if valid, a potentially significant matter because the nature and extent of the Plaintiff's pain is the central issue regarding whether he is disabled or is capable of performing sedentary work. A review of the record shows no consideration whatsoever of Dr. Grady's opinion regarding the diagnosis of Complex Regional Pain Syndrome and no comment regarding the physical findings and other bases for Dr. Grady's diagnosis. Reversal and remand are necessary for the fact finder to review and weigh Dr. Grady's opinion regarding the patient's

Complex Regional Pain Syndrome and to consider recontacting the claimant and Dr. Grady to clarify any disputed or unsettled issues in the medical record. If Dr. Grady's opinion regarding the patient's diagnosis of Complex Regional Pain Syndrome is given no weight by the ALJ, the fact finder must articulate good reasons for rejecting the medical source's opinion. If Dr. Grady's diagnosis is given any weight, it must then be considered in assessing the Plaintiff's credibility as well as in determining his RFC. *Id.*

A separate and independent basis for reversal and remand relates to the ALJ's heavy reliance on Plaintiff's lack of follow up and continued care after February 2007 as a basis to find the claimant's complaints of severe pain not "wholly credible." Tr. at 18-20. A fair reading of the ALJ's decision, with its five separate references to Plaintiff's lack of follow up and continued prescription medications, is that this was the primary basis for denying the disability claim. *Id.* The Court recognizes that a claimant's lack of continued care can be an important piece of evidence to evaluate credibility and the severity of injury. It is, however, important for the fact finder to consider whether certain factors, including affordability of medical care, interfered with the claimant's follow up care. SSR 96-7P, 61 Fed. Reg. at 34487. The ALJ may, in appropriate circumstances, be required to "recontact the [claimant] or question the [claimant] at the administrative proceeding in order to determine whether there are good reasons the [claimant] does not seek medical treatment or does not pursue treatment in a consistent manner." *Id.* Although the record has ample documentation that Plaintiff has no health insurance, had difficulty obtaining medical care because of his lack of resources, and was rendered penniless and "essentially homeless" because of his injuries and alleged inability to work, the record contains no inquiry by the ALJ, at the administrative hearing or otherwise, concerning whether

the claimant's financial condition contributed to his lack of follow up medical care. Tr. at 39, 42, 216, 316, 329, 332, 334. On remand, the fact finder should specifically inquire into this issue and make findings whether Plaintiff's lack of resources contributed to the lack of follow up care. Once that matter has been addressed, the ALJ should reassess the claimant's credibility in light of his findings as well as the additional information gathered in regard to the diagnosis of Complex Regional Pain Syndrome addressed above.[2]

## Conclusion

Based upon the foregoing, the Court hereby **REVERSES** the decision of the Commissioner and **REMANDS** this matter for further proceedings consistent with this opinion pursuant to Sentence Four of 42 U.S.C. § 405(g).

AND IT IS SO ORDERED.

Richard Mark Gergel
United States District Judge

February 20, 2013
Charleston, South Carolina

---

[2] Plaintiff also contests the failure of the Commissioner to find his impairments qualified for a Listing for a major dysfunction of a joint. 20 C.F.R. pt. 404, Subpt. P, App. 1, § 1.02. A factor to consider under that Listing is whether the impairment results in an "inability to ambulate effectively." *Id.* § 1.02(A). An "inability to ambulate effectively" can include "the inability to walk a block at a reasonable pace on rough or uneven surfaces" or the "inability to carry out routine ambulatory activities, such as shopping and banking." *Id.* § 1.00(B)(2)(b)(2). Plaintiff testified that he found it hard to "move around, walk around or anything" and could only walk a half a block. Tr. at 43, 44. This testimony is arguably inconsistent with the opinions of Dr. Ferrell and Dr. Fleischer. Tr. at 298, 302. Once the ALJ reassesses the Plaintiff's credibility in light of the issues addressed in this order, the ALJ should reconsider whether Plaintiff's impairments qualify for a § 1.02 Listing.